**Ellen BETTERSON, Plaintiff,**

v.

**HSBC BANK, USA, N.A., Defendant.**

**No. 1:11–CV–615 EAW.**

United States District Court,
W.D. New York.

Signed Sept. 30, 2015.

---

Frank T. Housh, Buffalo, NY, for Plaintiff.

Robert C. Weissflach, Harter Secrest and Emery LLP, Buffalo, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

Plaintiff Ellen Betterson ("Plaintiff"), a fifty-seven year old African–American woman (Dkt. 1 at ¶ 34; Dkt. 31–15 at 19:10–13), brings this action against defendant HSBC Bank, USA, N.A. ("Defendant" or "HSBC"), alleging employment discrimination based on gender, race, and age, and retaliation. (Dkt. 1). Presently before the Court is Defendant's motion for summary judgment. (Dkt. 31). For the following reasons, Defendant's motion is granted, and Plaintiff's complaint is dismissed in its entirety.

### BACKGROUND

The factual background set forth in this Decision and Order is based upon the facts set forth in Defendant's Local Rule 56 Statement of Undisputed Material Facts, filed at Docket no. 31–7 (hereinafter "SMF"), to which Plaintiff failed to respond. (See Part I of this Decision and Order, infra).

Plaintiff began working for Defendant on March 30, 1987, as an analyst/programmer in the Wholesale Systems Department in Buffalo, New York. (Id. at ¶ 13). Plaintiff progressed through various positions at HSBC and eventually joined the PCM Product Management Department in 1998. (Id.). As a Product Manager, Plaintiff provided "sales, marketing and product support for ... PCM product lines and business strategies to maximize contribution to economic benefit." (Id. at ¶ 14). Plaintiff was also responsible for providing technical support for product strategies, sales readiness, and channel delivery. (Id.).

Prior to October 2005, Plaintiff's supervisor was Jeanette Pilie. (Id. at ¶ 15). In October 2005, HSBC hired James Colassa-

no to manage the Product Management Department, in order to "improve [the department's] proficiency and accountability, since the complexity and demands of its operations were increasing at the time." (*Id.*). In 2007, Mr. Colassano implemented a "team leader approach department-wide," by which all workers reported to Team Leaders, instead of reporting to Mr. Colassano directly. (*Id.* at ¶ 17). Plaintiff was assigned to Team Leader Timothy Dray, and was subsequently reassigned to Team Leader Cheryl Gurz. (*Id.*).

### Plaintiff's Performance in the PCM Product Management Department led by Mr. Colassano

As part of the evaluation process for his employees, Mr. Colassano spoke with employees from other departments, observed his employees, and engaged directly with his employees. (*Id.* at ¶ 19). Mr. Colassano explained at his deposition that "[Plaintiff] ... came up pretty regularly as one of the weaker employees." (*Id.* at ¶ 20). Mr. Colassano also testified that Plaintiff did not respond promptly to inquiries from the Sales Department, had weak communication skills, and did not understand how HSBC's clients operated and used its products. (*Id.* at ¶¶ 20–21). Further, Mr. Colassano stated that Plaintiff "failed to take ownership of and accountability for her products," and blamed others for her problems. (*Id.* at ¶ 22). Mr. Colassano testified that he spoke with Plaintiff regarding her performance issues, including her failure to promptly respond to sales inquiries, in compliance with the department's Service Level Agreement. (*Id.* at ¶ 24).

Ms. Gurz, the Team Leader to whom Plaintiff reported, similarly testified at her deposition that Plaintiff failed to take ownership of her products. (*Id.* at 23).

### Plaintiff's 2006 & 2007 Performance Evaluations

Defendant provides its employees with two performance evaluations per year, a mid-year or interim review and a final review. (*Id.* at ¶ 25). Employees are rated numerically, with a "1" being "exceptional," and a "5" being "poor." (*Id.*).

In 2006, Plaintiff did not receive an interim review, but she did receive a final rating of "3," which means "strong," from Mr. Colassano. (*Id.* at ¶ 29). Plaintiff had received a "strong" rating for the two previous years from Ms. Pilie. (*Id.*). Plaintiff did not complain about the "strong" rating and signed off on the final 2006 review on April 3, 2007. (*Id.*).

In August 2007, for Plaintiff's mid-year review, Mr. Colassano rated Plaintiff on six performance objectives. Plaintiff received one "2" for "outstanding," and five ratings of "3," with an overall rating of "3." (*Id.* at ¶ 30). With respect to objective number two, Mr. Colassano noted that he had changed his rating from "4," or "inconsistent," to a "3," based on his discussion with Plaintiff and in anticipation of a strategic product review scheduled to take place after completion of the evaluation. (*Id.*). Plaintiff signed off on these interim ratings on August 31, 2007. (*Id.* at ¶ 31).

Ms. Gurz prepared Plaintiff's final 2007 performance evaluation, and received input from Timothy Dray and Mr. Colassano regarding Plaintiff's performance. (*Id.* at ¶ 32). Ms. Gurz gave Plaintiff a rating of "4," or "inconsistent." (*Id.*). Ms. Gurz noted that "the challenges [Plaintiff] faced in the first half of 2007 continued through the second half," including customer issues, failure to complete "key product initiatives," and a lack of business judgment. (*Id.* at ¶ 33). The comments on the 2007 final evaluation also provided that Plaintiff needed to improve her accountability, own-

ership, and closure of projects and issues. (*Id.*).

Plaintiff's final ranking of "4" for 2007 made her ineligible for a bonus. (*Id.* at ¶ 34). Accordingly, Ms. Gurz input zeros into the "Management Incentive Plan" categories, which relate to bonuses and are distinct from the overall performance ratings, for Plaintiff's 2007 evaluation. (*Id* at ¶¶ 28, 34). Plaintiff testified that she was aware that her performance evaluation for 2007 was a "4." (*Id.* at ¶ 35). Plaintiff's performance deficiencies were discussed with her on January 10, 2008, and she refused to sign the performance appraisal. (*Id.* at 36).

### Plaintiff's Request for HR Review of 2007 Final Rating

Plaintiff claimed that the "4" rating was "unfair," and requested that Human Resources review her 2007 final evaluation. (*Id.* at ¶ 37). Romina Dawson–Hall, the Vice President of Human Resources, investigated and determined that the "4" rating was justified. (*Id.*). Plaintiff subsequently complained that Ms. Dawson–Hall was "too closely aligned to management," and therefore Natalie Marrero from Human Resources also reviewed the performance evaluation. (*Id.* at ¶ 38). Ms. Marrero found that a "4" rating was justified. (*Id.*). Plaintiff's 2007 performance evaluation was closed on February 29, 2008, without her signature. (*Id.* at ¶ 39).

Plaintiff again asked Human Resources to review her 2007 evaluation after the review period was closed. (*Id.*). Plaintiff traveled to New York City to meet with Mr. Colassano and Ms. Marrero on March 4, 2008. (*Id.*). Plaintiff's supervisors responded that the 2007 evaluation was justified, and the matter was closed. (*Id.*).

### Plaintiff's March 2008 Complaint to "Tipline"

After the March 4, 2008 meeting, Plaintiff called Defendant's "Tipline" and com-

plained that her performance evaluation was the result of race and age discrimination by Mr. Colassano and Ms. Gurz. (*Id.* at ¶ 40). Ms. Dawson–Hall discussed these allegations with Plaintiff on March 20, 2008. (*Id.*). During that time, Plaintiff continued challenging her 2007 performance evaluation. (*Id.* at ¶ 41). Human Resources concluded that there was no basis on which to change Plaintiff's final rating for 2007, and the Tipline complaint was closed for lack of supporting evidence. (*Id.* at ¶ 42).

### March 2008 Verbal Warning/April 2008 Written Warning

Plaintiff's performance issues continued into early 2008. (*Id.* at 44). Ms. Gurz drafted an "Employee Interim Job Discussion" regarding Plaintiff's performance issues, which was presented to Plaintiff as a verbal warning on March 6, 2008. (*Id.*). The verbal warning addressed Plaintiff's responsiveness, outstanding requests, and deficiencies in communication. (*Id.* at ¶ 45). Plaintiff testified that she understood that the verbal warning criticized her performance, and made no reference to her race or age. (*Id.* at ¶ 46). Plaintiff's performance did not improve, and Ms. Gurz gave Plaintiff an "Initial Written Warning" in early April 2008, which focused on Plaintiff's responsiveness and communication deficiencies. (*Id.* at ¶ 47).

### Plaintiff Transfers to Accounts Payable Department

During the March 20, 2008 meeting, Ms. Dawson–Hall informed Plaintiff that she would support Plaintiff posting for other positions, despite the fact that Defendant's job-posting policy required at least a "3" rating to post for a new position. (*Id.* at ¶¶ 48–49). Mr. Colassano's manager, Raymond W. Fattell, Senior Vice President, Product Management and Development, approved the exception to the job-posting policy for Plaintiff. (*Id.* at ¶ 49). Plaintiff

voluntarily posted for another position and transferred to the Accounts Payable Department, effective April 14, 2008. (*Id.* at ¶ 50). The Product Management Department did not immediately replace Plaintiff; rather, other employees took over her responsibilities. (*Id.* at ¶ 52). On November 9, 2009, Defendant hired Robert Cleary to replace Plaintiff and Timothy Dray, who had posted to another department in September 2008. (*Id.* at ¶ 53).

Peggy Kirk, the Vice President of the Accounts Payable Department, interviewed and hired Plaintiff in April 2008. (*Id.* at ¶ 51). Plaintiff claims that Ms. Kirk began discriminating against her immediately. (*Id.*).

Plaintiff's position in the Accounts Payable Department was Accounting Operations Manager. (*Id.* at ¶ 54). This position was a lower job grade than her previous position as a Product Manager, but her pay and benefits remained the same. (*Id.*). Neither Mr. Colassano nor Ms. Gurz had any contact with the Accounts Payable Department before or after Plaintiff's transfer, other than arranging the effective date of the transfer, and neither of them had any input into Plaintiff's performance evaluations in the Accounts Payable Department. (*Id.* at ¶ 55).

### Plaintiff's 2008 Performance Reviews

Ms. Kirk testified that Plaintiff missed deadlines and did not communicate clearly. (*Id.* at ¶ 56). Plaintiff's 2008 performance evaluation from Ms. Kirk was a "4," at both the mid-year and final review. (*Id.* at ¶ 57). The 2008 performance evaluation stated that Plaintiff needed to improve management of her staff and time, develop a better understanding of the systems with which she worked, and improve her communication skills. (*Id.*). The evaluation also stated that on November 13, 2008, Ms. Kirk met with Plaintiff to discuss a Performance Improvement Plan to improve

these areas, and she encouraged Plaintiff to take training classes to develop her skills. (*Id.*).

### Plaintiff's Complaints in 2009 about 2007 Performance Rating

In late 2009, Plaintiff again complained about her 2007 performance rating, claiming that her earlier complaints had not yet been resolved. (*Id.* at ¶ 43). Vice President of Human Resources Peter F. Hutter reviewed the 2007 evaluation and related documentation, and interviewed seven individuals regarding the evaluation, including Plaintiff, Mr. Colassano, and Ms. Gurz. (*Id.*). Mr. Hutter received information regarding Plaintiff's failure to complete work, her client issues, and unwillingness to accept accountability for results. (*Id.*). He also permitted Plaintiff to provide additional documentation to support her contentions, but she was unresponsive in her follow-up and resisted efforts to keep the review in progress. (*Id.*). Mr. Hutter concluded that Plaintiff's 2007 performance review was warranted. (*Id.*).

### Plaintiff's 2009 Performance Reviews

Ms. Kirk gave Plaintiff mid-year and final ratings of "4" for 2009. (*Id.* at ¶ 62). The 2009 review noted that Plaintiff needed to refine her project management approach, work on her timeliness and prioritization, develop knowledge of Accounts Payable processes, and improve her communication skills. (*Id.*).

### Plaintiff's 2010 Complaints About Ms. Kirk

On January 29, 2010, Plaintiff complained that Ms. Kirk belittled employees and criticized her performance. (*Id.* at ¶ 58). On February 4, 2010, Plaintiff again expressed concern regarding Ms. Kirk's criticisms of her performance, including her 2008 evaluation, and scheduled a meeting with Ms. Kirk regarding Plaintiff's 2009 performance evaluation. (*Id.* at ¶ 59).

Zoe Zanides, Head of the Procurement Department and Ms. Kirk's supervisor, also attended the meeting. (*Id.* at ¶ 60).

Defendant investigated Plaintiff's allegations relating to Ms. Kirk's management style. (*Id.* at ¶ 61). The investigation revealed that Ms. Kirk was a capable manager, but was strict on occasions when goals were not met. (*Id.*). Ms. Kirk's management in this regard was consistent across staff members, and there was no indication of discrimination based on race, age, or gender. (*Id.*). Ms. Kirk received an "Initial Warning" for failing to meet Defendant's Positive Work Environment Policy, because there was evidence that Ms. Kirk used a loud or belittling tone with employees, and criticized employees in the presence of their co-workers. (*Id.*).

### Termination of Plaintiff's Employment

In March 2010, as a result of corporate realignment, the Accounts Payable Department merged with the Procurement Department. (*Id.* at 63). Both departments had an employee responsible for systems project management. (*Id.* at ¶ 64). Ms. Zanides recommended retaining Jason Roberts from the Procurement Department, rather than Plaintiff, based on Mr. Roberts' performance and experience. (*Id.*). Mr. Roberts had performance ratings of "3" for 2008 and "2" for 2009, whereas Plaintiff had ratings of "4" for both of those years. (*Id.*).

Plaintiff was one of two individuals eliminated from the Accounts Payable Department in September 2010. (*Id.* at 65). The other individual was Nicholas Marchuk, who was responsible for supporting reporting and other related projects. (*Id.*). Both Plaintiff and Mr. Marchuk were offered standard severance packages, pursuant to Defendant's severance policy. (*Id.* at ¶ 67). To receive the package, an employee was required to sign a Separation Agreement and Release, and not revoke the agreement within the revocation peri-

od. (*Id.*). The severance package also provided that the release would not waive the claims in Plaintiff's pending Equal Employment Opportunity Commission ("EEOC") charge, which she had filed in March 2010. (*Id.* at ¶ 68). Plaintiff's termination date was September 17, 2010. (*Id.* at ¶ 69). Because she did not sign the separation agreement, Plaintiff did not receive severance benefits. (*Id.*).

### Plaintiff's EEOC Charges

On March 29, 2010, before she was terminated, Plaintiff had filed a charge of discrimination against Defendant before the EEOC, claiming discrimination based on her race, gender, and age, as well as retaliation for complaining of discrimination in the workplace. (*Id.* at ¶ 1). On December 13, 2010, Plaintiff filed a second charge with the EEOC claiming that her termination from employment in August 2010 was in retaliation for her prior complaints of discrimination. (*Id.* at ¶ 2).

On April 20, 2011, the EEOC issued a Dismissal and Notice of Rights for each charge filed by Plaintiff, finding that "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (*Id.* at ¶ 3). The EEOC dismissal stated that a majority of Plaintiff's claims were beyond the 300–day statute of limitations, and that Plaintiff had performance issues under different supervisors in different departments. (*Id.* at ¶ 4). The EEOC also noted that Plaintiff's position was eliminated due to corporate realignment, and that another male individual was affected by this realignment. (*Id.*).

### PROCEDURAL HISTORY

Plaintiff filed her federal complaint on July 20, 2011, alleging the following causes of action: (1) gender discrimination, in violation of "Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s)

2000e et seq., and 42 U.S.C. Section 1981A"; (2) racial discrimination, in violation of "Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, and 42 U.S.C. Section 1981"; (3) age discrimination in violation of the "Age Discrimination in Employment Act of 1967" ("ADEA"); (4) race, gender, and age discrimination in violation of the "New York State Human Rights Law" ("NYSHRL"); and (5) retaliation in violation of all the foregoing federal and state statutes. (Dkt. 1 at ¶¶ 30–46).

On August 19, 2013, after the completion of discovery, Defendant filed a motion for summary judgment. (Dkt. 31). Plaintiff responded on October 28, 2013 (Dkt. 44), and Defendant replied on November 14, 2013 (Dkt. 45).

On January 27, 2015, the case was transferred to the undersigned. (Dkt. 46). The Court originally scheduled oral argument for April 22, 2015, but adjourned the argument at Plaintiff's request. (Dkt. 47 & 48). The Court rescheduled oral argument for June 3, 2015, and argument was heard on that date. (Dkt. 49 & 51). The Court reserved decision on the motion. (Dkt. 51). At oral argument, the Court permitted the parties to submit supplemental briefing on the issue of the tolling of the statute of limitations for Plaintiff's state law claims. (Dkt. 50 & 51). Defendant filed its letter brief relating to this issue on July 14, 2015. (Dkt. 52). Plaintiff did not file any supplemental submissions.

### DISCUSSION

#### I. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*' " *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec.,* 475 U.S. at 586–87, 106 S.Ct. 1348) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

In support of its summary judgment motion, Defendant submitted the previously-referenced SMF supported by voluminous exhibits in admissible form through use of sworn factual declarations and deposition testimony. (Dkt. 31, 32 & 33). After three extensions of time (Dkt. 38, 41 & 43), Plaintiff submitted a memorandum of law to which she attached 90 pages of performances evaluations for the years 1987 through 2008 (Dkt. 44). Plaintiff failed to submit any sworn factual declaration or response to Defendant's SMF.

L.R. Civ. P. 56(a)(2) provides that each statement in a moving party's statement of facts will be deemed admitted by the opposing party for purposes of the motion, unless it is specifically controverted by an opposing statement. *See also* Fed.

R.Civ.P. 56(e)(2) (when a party fails to properly support an assertion of fact or fails to address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion). The Court is cognizant that it has discretion to excuse a party's failure to file a statement of facts, and the Second Circuit Court of Appeals has indicated that a district court should not deem unopposed facts to he admitted when those facts are unsupported by the record. *See Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73–74 (2d Cir.2001). Defendant's SMF is fully supported by the accompanying exhibits. Considering the abundance of admissible supporting evidence submitted by Defendant and the dearth of evidence submitted by Plaintiff, Defendant's SMF is deemed admitted by Plaintiff. *See N.Y. State Teamsters Conf. Pen. & Ret. Fund v. Express Servs., Inc.,* 426 F.3d 640, 648–49 (2d Cir.2005); *Gubitosi v. Kapica,* 154 F.3d 30, 31 n. 1 (2d Cir.1998).

Plaintiff has failed to submit any sworn factual statements in opposition to the summary judgment motion. In other words, the facts as offered by Defendant remain uncontroverted. Moreover, Plaintiff's attempt to attach evidentiary material to her memorandum of law is procedurally defective. *See Dorchester Fin. Holdings Corp. v. Banco BRJ, S.A.,* No. 11–CV–1529 (KMW)(KNF), 2014 WL 3747160, at *5, 2014 U.S. Dist. LEXIS 96101, at *13 (S.D.N.Y. July 3, 2014) ("Attaching exhibits in support of the motion to a memorandum of law is improper. As no affidavit accompanied Exhibits A–K, they cannot be considered by the Court on this motion."). As a result, the record for consideration by the Court on this motion for summary judgment is based solely upon the factual material submitted by Defendant.

## II. *PLAINTIFF'S TIME–BARRED CLAIMS UNDER TITLE VII AND THE ADEA—BASED ON CONDUCT OCCURRING PRIOR TO JUNE 2, 2009*

With regard to Plaintiff's claims asserted pursuant to Title VII and the ADEA, Defendant argues that any claims based on conduct occurring prior to June 2, 2009, are not actionable, because any such conduct occurred more than 300 days prior to Plaintiff's first charge that she filed with the EEOC. (Dkt. 34 at 4). Plaintiff does not directly address this argument, but rather argues that time-barred acts of discrimination can be used to support other claims of discrimination. (Dkt. 44 at 13). Plaintiff also contends that for a hostile work environment claim, not all acts or complaints need to have occurred within the 300–day statutory period. (*Id.*).

### A. *300 Day Limitations Period*

A New York plaintiff seeking to pursue claims pursuant to Title VII or the ADEA "must file administrative charges with the EEOC within 300 days of the alleged discriminatory acts." *Flaherty v. Metromail Corp.,* 235 F.3d 133, 136 n. 1 (2d Cir.2000). *See* 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. § 626(d)(1)(B). The statutory filing period operates as a statute of limitations; therefore, the failure to file an administrative complaint will bar a plaintiff's action. *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir. 1996); *see also Vincent v. Wal–Mart Store 3420,* No. 10–CV–5536 (JFB)(AKT), 2012 WL 3800833, at *5, 2012 U.S. Dist. LEXIS 125269, at *16 (E.D.N.Y. Sept. 4, 2012). The statute of limitations begins to run when each discriminatory act occurs. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

■ Plaintiff filed her first EEOC charge alleging race, gender and age discrimination, and retaliation, on March 29, 2010. (Dkt. 31–9, Dkt. 31–12). Accordingly, any alleged discriminatory acts occurring more than 300 days before that time; that is, before June 2, 2009, are time-barred. According to Plaintiff's complaint and her testimony, these acts include the alleged discriminatory conduct perpetrated by Mr. Colassano and Ms. Gurz when Plaintiff worked in the Product Management Department during 2006–2008 (*see* Dkt. 31–15 at 21:20–23), as well as the alleged discrimination perpetrated by Ms. Kirk when Plaintiff was working in the Accounts Payable Department, during 2008 and early 2009. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claims under Title VII and the ADEA based on that conduct.

### B. *The Continuing Violation Doctrine and Plaintiff's Purported Hostile Work Environment Claims*

Plaintiff responds to Defendant's statute of limitations arguments by contending that because she "alleges a continuing hostile work environment, not all acts or complaints need to have taken place within the 300–day statutory limit." (Dkt. 44 at 13). There are three problems with this argument.

First, it is questionable whether Plaintiff has even alleged a hostile work environment claim. The phrase "hostile work environment" does not appear in Plaintiff's complaint or EEOC charges. (Dkt. 1, Dkt. 31–9). Rather, Plaintiff alleges discrimination through disparate treatment due to her gender, race, and age (Dkt. 1 at 5–7), as opposed to harassment in the form of a hostile work environment.

■ Second, even if Plaintiff had successfully alleged a hostile work environment claim, any such claim based upon actions occurring while Plaintiff was assigned to the Project Management Department would be barred by the statute of limitations, because Plaintiff's transfer to the Accounts Payable Department would preclude application of the continuing violation doctrine. Here, it is undisputed that Plaintiff had a new supervisor in the Accounts Payable Department, and her old supervisors had no involvement in her later performance evaluations or work activities. (Dkt. 31–4 at ¶ 14, Dkt. 31–5 at ¶ 12). *See Little v. NBC, Inc.*, 210 F.Supp.2d 330, 369 (S.D.N.Y.2002) ("These incidents occurred over a period in which [the plaintiff] worked in a number of different departments under several different supervisors. This mitigates against invocation of the continuing violation doctrine.") (citation omitted); *Crosland v. City of N.Y.*, 140 F.Supp.2d 300, 308 (S.D.N.Y.2001) (no continuing violation where "the retaliatory acts were taken by different supervisors in different departments"), *aff'd sub nom.*, *Crosland v. Safir*, 54 Fed.Appx. 504 (2d Cir.2002); *Alleyne v. Four Seasons Hotel–N.Y.*, 85 Fair Empl. Prac. Cas. (BNA) 510, 2001 WL 135770, at *8, 2001 U.S. Dist. LEXIS 1503, at *22 (S.D.N.Y.2001) (no continuing violation where "[n]umerous different supervisors and decision-makers from different departments were involved in the decisions to fill the various positions and there is no evidence that their behavior was related in any way."), *aff'd*, 25 Fed.Appx. 74 (2d Cir. 2002).

■ Third, even if timely asserted, Plaintiff's allegations do not rise to the level of a hostile work environment claim. In order to succeed on a claim for a hostile work environment, a plaintiff must prove " '(1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment; and

(2) that a specific basis exists for imputing the conduct that created the hostile work environment to the employer.'" *Chenette v. Kenneth Cole Prods.*, 345 Fed.Appx. 615, 619–20 (2d Cir.2009) (quoting *Van Zant*, 80 F.3d at 715). "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir.2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). "A work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it. A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir.1999) (internal citation omitted).

■ "Isolated incidents typically do not rise to the level of a hostile work environment unless they are 'of sufficient severity' to 'alter the terms and conditions of employment as to create such an environment.'" *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir.2006) (quoting *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 227 (2d Cir.2004)). When evaluating a hostile work environment claim, the Court must not "view individual incidents in isolation," or "view the record in piecemeal fashion," but should consider "the totality of the circumstances, viewed from the perspective . . . of a reasonable person in the plaintiff's position, considering all the circumstances [including] the social context in which particular behavior occurs and is experienced by its target." *Redd v. N.Y.S. Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012) (internal quotations and citations omitted) (alteration in original).

■ At oral argument, Plaintiff's counsel stated that her hostile work environment claim was based on (1) Mr. Colassano's comment that Plaintiff "not show her face" at his conference, (2) Ms. Gurz's comment that two college students could do Plaintiff's job, and (3) Plaintiff's performance evaluations (none of which, by Plaintiff's own admission, make any reference to Plaintiff's race, gender or age). Mr. Colassano's comment was made, according to Plaintiff, when he told her that she could attend a conference in Las Vegas as long as she did not "show her face" at another conference he was attending at the same time in Las Vegas. (Dkt. 31–15 at 33:2–19). Plaintiff took Mr. Colassano's comment to be based on race, while Ms. Gurz's alleged discriminatory comment was allegedly based on Plaintiff's age. Even when considered together and in conjunction with Plaintiff's claims of disparate treatment through poor performance evaluations, these isolated comments simply do not rise to the level of a hostile work environment claim. *See DeSalvo v. Volhard*, 312 Fed.Appx. 394, 397 (2d Cir. 2009) (co-worker's isolated comments that plaintiff was a "goody-goody" and "the holy-holy" did not show an objectively hostile work environment, and other insults concerning work-related issues did not concern her age or religion); *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir.2004) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."). In fact, it is doubtful whether Plaintiff could ever prove a hostile work environment claim involving Mr. Colassano, who worked in Defendant's New York City office (*see* Dkt. 31–4 at ¶ 8), and according to Plaintiff's own testimony, her few interactions with Mr. Colassano were by telephone (Dkt. 31–15 at 35:13–14 ("The few times I

ever met with him probably was on the phone.")).

As a result, any claims under the ADEA or Title VII based on conduct occurring prior to June 2, 2009, are time-barred.

## III. TIMELY ASSERTED TITLE VII AND ADEA DISCRIMINATION CLAIMS—BASED UPON MS. KIRK'S CONDUCT

Plaintiff's only Title VII and ADEA discrimination claims that are not barred by the statute of limitations are her complaints of age and gender discrimination by Ms. Kirk (in other words, conduct allegedly occurring after she transferred into the Accounts Payable Department).[1] Plaintiff complains that Ms. Kirk treated her differently because of her gender and age, which essentially ranged from publicly making disparaging comments regarding Plaintiff, withholding information necessary for Plaintiff's job performance, and issuing poor performance evaluations. (Dkt. 1 at ¶ 28; Dkt. 31–9 at 7–8; Dkt. 31–15 at 28:9–25). Defendant concedes that Ms. Kirk was issued an "initial warning" for her failure to meet Defendant's Positive Work Environment Policy, but that her management style in this regard was consistent across staff members, and there was no indication that she discriminated against Plaintiff due to her race, age, or gender. (Dkt. 31–7 at ¶ 61).

Discrimination claims based on disparate treatment are assessed using the burden shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Demoret*, 451 F.3d at 151 (applying burden-shifting framework to gender discrimination claim); *Kirkland v. Cablevision*

*Sys.*, 760 F.3d 223, 225 (2d Cir.2014) (applying burden-shifting framework to race discrimination claims); *Davidson v. La-Grange Fire Dist.*, 523 Fed.Appx. 838, 839 (2d Cir.2013) (age discrimination claims governed by burden-shifting framework). The standards for evaluating employment discrimination claims under Title VII and the NYSHRL are identical. *See Hyek v. Field Support Servs., Inc.*, 461 Fed.Appx. 59, 60 (2d Cir.2012) (stating that the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under Title VII).

To establish a *prima facie* case, a plaintiff must demonstrate: "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir.2009); *Kirkland*, 760 F.3d at 225 (race discrimination); *Carlton v. Mystic Transp. Inc.*, 202 F.3d 129, 134 (2d Cir. 2000) (age discrimination). If a plaintiff establishes a *prima facie* case, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the [adverse act]." *Leibowitz*, 584 F.3d at 499 (internal quotations and citation omitted) (alteration in original). "Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir.2010). In other words, the plaintiff must "demonstrate by competent evidence that the legitimate reasons offered by the

---

1. Plaintiff does not allege that Ms. Kirk's conduct was motivated by race, but rather gender and age. (Dkt. 31–9 at 7–8 ("Kirk treats Betterson differently based upon ***Gender &*** ***Age***" (emphasis in original)); Dkt. 31–15 at 18:11–18 (Plaintiff contends that only Mr. Colassano and Ms. Gurz discriminated against her based on race)).

defendant were not its true reasons, but were a pretext for discrimination." *Leibowitz*, 584 F.3d at 499 (internal quotations and citation omitted).[2]

### A. Prima Facie Case

Plaintiff has satisfied the first two prongs of a *prima facie* case for gender and age discrimination. Namely, Plaintiff is a member of a protected class, and she was qualified for her position. In this respect, Defendant concedes that Plaintiff was "minimally qualified" for the positions she held and, although Defendant documented Plaintiff's poor performance, Plaintiff was not terminated for that reason, and had worked for Defendant for several years. (Dkt. 34 at 8). However, the Court has significant questions concerning Plaintiff's ability to satisfy the third and fourth prongs of the *prima facie* case, in that it does not appear that she was subjected to adverse employment actions under circumstances giving rise to an inference of discrimination.

The alleged adverse actions that serve as the basis for Plaintiff's complaints about Ms. Kirk relate to publicly making disparaging comments regarding Plaintiff, withholding information necessary for Plaintiff's job performance, and issuing poor performance evaluations. (Dkt. 1 at ¶ 28; Dkt. 31–9 at 7–8; Dkt. 31–15 at 28:9–25). It is difficult for the Court to see how any of this alleged conduct rises to the level of an adverse employment action. There is no question that the termination of Plaintiff's employment constituted an adverse employment action, but Plaintiff does not base her discrimination claims on the termination of her employment.[3]

▬ It is well-settled that criticism of an employee's work performance does not amount to an adverse employment action. *See Weeks v. N.Y.S. Div. of Parole*, 273 F.3d 76, 86 (2d Cir.2001) ("It hardly needs saying that criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action."); *Turley v. ISG Lackawanna, Inc.*, 803 F.Supp.2d 217, 239 (W.D.N.Y. 2011) ("Excessive monitoring and oversight of work do not constitute adverse employment action"); *Kaplan v. Multimedia Entm't, Inc.*, No. 03–CV–0805C(F), 2008 WL 686774, *6, 2008 U.S. Dist. LEXIS 18262, *16 (W.D.N.Y. Mar. 10, 2008) ("It is obvious that subjecting an employee to a performance evaluation, a tool by which an employer can assess the strengths and weaknesses of an employee, cannot itself be termed a materially adverse employment action. Likewise, criticism of an employee, which is necessarily part of the employment relationship, is not an adverse employment action.").

▬ Furthermore, negative performance evaluations or written warnings, with-

---

**2.** Unlike a claim under Title VII, a plaintiff asserting an ADEA claim must show pretext on a summary judgment motion through proof that "a triable issue [exists] as to whether her age was a 'but for' cause of [the adverse employment action]." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir.2010) (*quoting Gross v. FBL Fin. Servs.*, 557 U.S. 167, 180, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)). Because Plaintiff in this case is unable to meet even the lower mixed-motive standard applicable to Title VII cases, the Court does not engage in a separate analysis of Plaintiff's ADEA claims.

**3.** Although Plaintiff's employment was ultimately terminated in August 2010, Plaintiff's EEOC charge related to the termination of employment limited the basis for any claim to a retaliation claim. (Dkt. 31–10). In fact, Plaintiff's Complaint does not even make reference to the termination of her employment, but the Court will nonetheless construe the retaliation claim as being based on Plaintiff's employment ending. (*See* Part V of this Decision and Order, *infra* ).

out an accompanying change in the terms and conditions of employment, will not rise to the level of an adverse employment action. *See, e.g., Chang v. Horizons,* 254 Fed.Appx. 838, 839 (2d Cir.2007) ("oral and written warnings do not amount to materially adverse conduct"); *Shaughnessy v. Xerox Corp.,* 12–CV–6158T, 2015 WL 1431687, at *4, 2015 U.S. Dist. LEXIS 39537, at *11 (W.D.N.Y. March 27, 2015) ("It is well established, however, that criticisms, and even written warnings, do not constitute adverse employment action where there is no diminution in pay, job status, or benefits.").

■ Similarly, "trivial harms," "petty slights or minor annoyances" or "personality conflicts ... that generate antipathy and snubbing" do not rise to the level of an adverse employment action. *Tepperwien v. Entergy Nuclear Operations, Inc.,* 663 F.3d 556, 571 (2d Cir.2011) (comment made by supervisor at employee meeting not materially adverse action, nor was using a false reason to prompt Plaintiff to attend a meeting).

■ Further, as to the fourth element of a *prima facie* case, Plaintiff has not alleged conduct by Ms. Kirk that occurred under circumstances giving rise to an inference of discrimination. Plaintiff testified that Ms. Kirk, a woman, discriminated against her on the basis of gender. (Dkt. 31–15 at 18:19–24). Plaintiff also testified that Ms. Kirk discriminated against her on the basis of her age, but acknowledged that Ms. Kirk was older than her. (*Id.* at 19:7–25, 20:1–3). *See Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 561 (2d Cir.1997) (counting among the factors belying an inference of age discrimination the fact that "Bacolas, who caused [the plaintiff] to be fired, was the very person who had hired her just eight days earlier ... [and was] also a year older than [the plaintiff].."); *Connell v. Consol. Edison Co. of N.Y., Inc.,* 109 F.Supp.2d 202, 209

(S.D.N.Y.2000) (no inference of discriminatory intent where decision-makers are in same protected class as plaintiff); *Toliver v. Cmty. Action Comm'n to Help the Economy, Inc.,* 613 F.Supp. 1070, 1074 (S.D.N.Y.1985) (indicating that if decision-maker is in the same protected class as plaintiff, claims of discrimination become less plausible), *aff'd,* 800 F.2d 1128 (2d Cir.1986); *Focarazzo v. Univ. of Rochester,* 947 F.Supp.2d 335, 339 (W.D.N.Y. 2013) (age discrimination unlikely given that the decision maker was "about the same age" as the plaintiff); *Fosen v. N.Y. Times,* No. 03–CV–3785 (KMK)(THK), 2006 WL 2927611, at *5, 2006 U.S. Dist. LEXIS 75662, at *14–15 (S.D.N.Y. Oct. 11, 2006) ("Any inference of discrimination was also critically undermined by the fact that the supervisors responsible for Plaintiff's termination and transfer were both women, one of whom was three years Plaintiff's senior"). 

While discriminatory conduct may be perpetrated by members of a protected class against other members of that same class, Ms. Kirk's status as a woman who was older than Plaintiff certainly undercuts Plaintiff's efforts to contend that there are disputed issues of material fact concerning her ability to prove a *prima facie* case of discrimination. This is particularly the case where Ms. Kirk is the individual who initially interviewed and hired Plaintiff, thus weakening any claim that there is an inference of discrimination. *See, e.g., Grady,* 130 F.3d at 560 ("[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire. This is especially so when the firing has occurred only a short time after the hiring."). Finally, Plaintiff received the same complaints from multiple supervisors within the same department, and across depart-

ments, thus similarly undermining Plaintiff's claims that Ms. Kirk's criticisms were made under circumstances giving rise to an inference of discrimination.

### B. Defendant's Legitimate, Non–Discriminatory Reasons

Even if Plaintiff was able to establish a *prima facie* case, Defendant has satisfied its burden to articulate a legitimate, non-discriminatory reason for Ms. Kirk's conduct.

First, all of Plaintiff's supervisors, including Ms. Kirk, testified that Plaintiff had significant problems in the areas of customer service, responsiveness, timely completion of initiatives, and accountability, ownership, and closure of projects, in both the Project Management and Accounts Payable departments. (Dkt. 31–3 at ¶¶ 23–24, 33, 35–37, 43, 46; *see also* Dkt. 31–4 at ¶¶ 6–7, 9–11) (Mr. Colassano had numerous communications with Plaintiff during her employment regarding her performance issues, which included poor communication, technical rather than strategic thinking, and lack of ownership and accountability); Dkt. 31–5 at ¶¶ 6, 8–9 (Ms. Gurz had numerous conversations with Plaintiff during her employment regarding her performance deficiencies, including her failing to meet deadlines, unsatisfactory responsiveness and communication, and lack of ownership and accountability); Dkt. 31–18 at 46:3–10; 47:3–15; 82:13–20) (Ms. Kirk testified that Plaintiff frequently missed deadlines while working in the Accounts Payable Department)).

Plaintiff also acknowledged that her supervisors had complaints regarding her performance, both before and at the time of her yearly reviews. (*See* Dkt. 31–15 at 102–107; 121–122). Plaintiff's evaluations document her performance issues, as far back as 2006. (*See* Dkt. 32–3 at 4 (Plaintiff "faced a number of challenges in 2006," and needs to "actively prioritize and man-

age .... activities"); Dkt. 32–4 at 3 (In 2007, Plaintiff exhibited "weak leadership and no ownership ... extremely poor business judgment and a failure to properly and timely escalate the critical issues."); Dkt. 32–13 at 6 (In 2008, "Ellen continues to struggle with her new role in Accounts Payable."); Dkt. 32–14 at 6 (In 2009, "Ellen needs to continue to refine her project management approach.... In addition she needs to work on her timeliness and ability to set/determine priorities as she continues to provide last minute notices to the management team which then causes scheduling issues for the department, as well as missed due dates.")).

Second, it is not contested by Plaintiff that Ms. Kirk's management style was consistent across staff members, regardless of their age or gender. (Dkt. 31–7 at 61). *See Petrosino,* 385 F.3d at 221 ("Title VII prohibits 'discrimination ... because of ... sex. Thus, a work 'environment which is equally harsh for both men and women' cannot support a claim for sex discrimination.' ") (citations omitted).

### C. Pretext

In order to avoid summary judgment, Plaintiff must "demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Leibowitz,* 584 F.3d at 499 (quotation omitted). If the plaintiff "has failed to show that there is evidence that would permit a rational factfinder to infer that the employer's proffered rationale is pretext, summary judgment dismissing the claim is appropriate." *Patterson,* 375 F.3d at 221 (citation omitted).

Here, the record lacks evidence-based facts to support a claim of pretext. Rather, the evidence before the Court, consisting solely of materials submitted by Defendant and conclusory allegations by

Plaintiff, demonstrates that Defendant had legitimate, non-discriminatory reasons for Plaintiff's poor performance reviews and other associated conduct. Plaintiff has simply failed to carry her burden to establish that those reasons were a pretext for discrimination. *See Augustus v. Nassau,* 596 Fed.Appx. 41, 42 (2d Cir.2015) ("Given the evidence of [the plaintiff's] repeated failures to complete important aspects of her job and the dearth of evidence supporting the existence of a discriminatory animus, the district court did not err in finding that [the plaintiff] did not show by a preponderance of the evidence that [the] defendant's nondiscriminatory justification was merely a pretext for racial discrimination."); *Smith v. Am. Express Co.,* 853 F.2d 151, 155 (2d Cir.1988) (affirming grant of summary judgment for employer because the plaintiff's affidavit and memorandum "reveal nothing that would convince a factfinder that the reasons given by [the employer] for promoting [another employee] rather than [the plaintiff] were a pretext for discrimination. Rather his allegations are conclusory and unsupported by evidence of any weight; they are insufficient to satisfy the requirements under Rule 56(e)."); *Watson v. Geithner,* No. 09 Civ. 6624(HBP), 10 Civ. 3948(HBP), 10 Civ. 7282(HBP), 2013 WL 5420932, at *11, 2013 U.S. Dist. LEXIS 139673, at *32 (S.D.N.Y. Sept. 27, 2013) (granting summary judgment in favor of the defendants and noting that where the defendants did not "merely articulate" but "substantially established" legitimate, nondiscriminatory reasons, plaintiff's task of proving pretext was "more difficult," and that the plaintiff's opposition brief was a "re-statement of her complaints," and consisted of "con-

clusory statements that lack evidentiary support.") (quotation omitted).

"It is not this Court's role to second-guess [an employer's] evaluation of [an employee.]" *Pawlowski v. Unified Court Sys.,* No. 12–CV–208S, 2014 WL 2453110, at *5, 2014 U.S. Dist. LEXIS 75547, at *15 (W.D.N.Y. June 2, 2014). Here, Plaintiff has nothing other than her own subjective beliefs to support her claims of discrimination by Ms. Kirk. Defendant's statement of material facts is uncontested, and Plaintiff has failed to offer any factual matter in opposition to Defendant's summary judgment motion. Because there is no disputed issue of material fact regarding Plaintiff's discrimination claims based upon conducting occurring after June 2, 2009, Defendant is entitled to summary judgment on these claims.

## IV. *PLAINTIFF'S CLAIMS PURSUANT TO 42 U.S.C. § 1981*

The parties do not expressly address Plaintiff's claims of racial discrimination asserted pursuant to 42 U.S.C. § 1981,[4] but of course, any such claims are not required to undergo the EEOC exhaustion requirement, and instead, may be asserted within four years of the alleged discriminatory conduct. *See, e.g., Bowen–Hooks v. City of N.Y.,* 13 F.Supp.3d 179, 209 (E.D.N.Y.2014). In other words, any § 1981 claim may be timely pursued based upon conduct occurring within four years of the commencement of Plaintiff's litigation (or July 2007 and after). A claim under § 1981 is evaluated under the same *McDonnell Douglas Corp.* burden-shifting framework. *Id.* at 209–210.

---

4. Although Plaintiff cites 42 U.S.C. § 1981 as a statutory basis for her race discrimination claim alleged in the second cause of action, she titles that cause of action as one asserted pursuant to "Title VII". (Dkt. 1 at 5). None-

theless, even though not addressed by the parties, the Court will construe Plaintiff's race discrimination claim (as well as her retaliation claim) as being asserted pursuant to 42 U.S.C. § 1981 and Title VII.

The race discrimination claims asserted by Plaintiff are limited to conduct allegedly taken by Mr. Colassano and Ms. Gurz (Dkt. 31–15 at 18:11–18), all of which necessarily occurred before Plaintiff transferred to the Accounts Payable Department in April 2008. In her complaint, Plaintiff makes allegations concerning: (1) alleged verbal abuse by Mr. Colassano in the Fall of 2007 (Dkt. 1 at ¶ 19); (2) realigning Plaintiff's position in December 2008, so that she was forced to report directly to Ms. Gurz (*id.* ¶ 20); (3) Ms. Gurz having a reputation for harassing members of the minority community (*id.* ¶ 21); (4) Ms. Gurz excluding Plaintiff from desirable projects (*id.* ¶ 23); and (5) Ms. Gurz allegedly falsifying records, making false allegations, and giving Plaintiff a bogus behavior warning (*id.* at ¶ 24). Even on their face, however, many of these allegations are unrelated to claims of race discrimination, and therefore may not be pursued under § 1981. (*See, e.g., id.* at ¶ 22 (claim that Ms. Gurz told Plaintiff "she could 'replace her with two college students' ")); *id.* at ¶ 23 (claims that Ms. Gurz excluded Plaintiff from projects and routinely assigned them to "younger workers").

In support of its motion for summary judgment, Defendant has submitted an affidavit from Ms. Gurz wherein she explains that she repeatedly attempted to address Plaintiff's wide-ranging and significant performance issues, and at no time did she consider Plaintiff's race when she criticized or rated Plaintiff's performance. (Dkt. 31–5 at ¶¶ 6–10). Similarly, Defendant has submitted an affidavit from Mr. Colassano wherein he sets forth Plaintiff's significant performance issues, and the fact that he did not at any time consider Plaintiff's race in assessing Plaintiff's performance. (Dkt. 31–4 at ¶¶ 5–12).

▉ The factual statements offered by Ms. Gurz and Mr. Colassano remain uncontroverted. Indeed, it is undisputed that despite the performance issues while working in the Product Management Department and the realignment of her position so that she reported to a team leader, Plaintiff never suffered any decrease in pay and her job responsibilities stayed the same. (Dkt. 31–15 at 23:9–13; 24:1–2). In fact, in April 2008, Plaintiff was able to voluntarily transfer to another position, and thereafter neither Ms. Gurz nor Mr. Colassano had any role in her employment. (Dkt. 31–7 at ¶¶ 50, 55). As discussed at Part III of this Decision and Order, *supra,* criticism of an employee's work performance or poor performance evaluations, without any corresponding change in the terms and conditions of employment, does not rise to the level of an adverse employment action.

Plaintiff complains that she was not allowed to attend meetings as a result of the alleged discrimination by Mr. Colassano and Ms. Gurz, but she admitted that she rarely attended meetings previously and she was still able to perform her job. (Dkt. 31–15 at 26:12–27:14). Under the circumstances, this does not constitute an adverse employment action. *See, e.g., Dillon v. Morano,* 497 F.3d 247, 254 (2d Cir. 2007) (exclusion from meetings did not constitute adverse employment action); *Kurian v. Forest Hills Hosp.,* 962 F.Supp.2d 460, 470 (E.D.N.Y.2013) (collecting cases).

As a result, the record before the Court does not establish that Plaintiff suffered an adverse employment action as a result of the alleged discriminatory animus of Mr. Colassano and Ms. Gurz.

Moreover, even if Plaintiff could establish that she was subjected to an adverse employment action, she has offered no evidence to support a claim that the alleged adverse action occurred under circumstances giving rise to an inference of

discrimination. Similarly, Defendant has offered legitimate non-discriminatory reasons in the form of the uncontroverted proof from Mr. Colassano and Ms. Gurz concerning Plaintiff's performance issues, and it is apparent that Plaintiff cannot establish pretext.

Indeed, it is undisputed that neither Mr. Colassano nor Ms. Gurz made racial comments or uttered any racial epithets. (Dkt. 31–7 at ¶ 73). In fact, the only comment that Plaintiff contends she understood to be race-based, was Mr. Colassano's alleged comment that Plaintiff could attend a conference in Las Vegas, but she should not "show her face" at the conference he would be attending at the same time. (Dkt. 31–15 at 33:2–19). This alleged statement is simply too innocuous to present proof of anything, let alone racial discrimination.[5]

Similarly, Plaintiff has offered no circumstantial evidence to support her claims of pretext, such as proof of similarly situated Caucasian employees who were treated differently than Plaintiff. In fact, Plaintiff was given an advantage over other similarly situated employees with poor performance evaluations, when an exception to the Job Posting Policy was permitted and she was allowed to voluntarily transfer out of the Product Management Department (Dkt. 31–7 at ¶¶ 49–50).

Put simply, Plaintiff has failed to offer any facts to satisfy her burden to prove racial discrimination under the *McDonnell Douglas* test. As a result, the undisputed facts before the Court demonstrate that there are no triable issues with regard to Plaintiff's claims of race discrimination under 42 U.S.C. § 1981.

## V. *PLAINTIFF'S RETALIATION CLAIMS*

Plaintiff alleges that she was retaliated against because she complained about race, gender, and age discrimination. Because the standards for retaliation are the same under Title VII, the NYSHRL, § 1981 and the ADEA, the Court will address Plaintiff's retaliation claims together. *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir.2012) (*McDonnell Douglas* framework applies to discrimination and retaliation claims under Title VII and the ADEA); *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir.2010) ("Retaliation claims made under 42 U.S.C. § 1981, like those made under Title VII, are evaluated using a three-step burdenshifting analysis."); *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir.2006) ("[R]etaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII.").

Title VII makes it unlawful to retaliate against an employee " 'because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or *participated in any manner* in an investigation, proceeding, or hearing under this subchapter.' " *Deravin v. Kerik*, 335 F.3d 195, 203 (2d Cir.2003) (quoting 42 U.S.C. § 2000e–3(a)) (emphasis in original). Similar to other discrimination claims, retaliation claims are analyzed under the three-step burden-shifting analysis set forth in *McDonnell Douglas Corp.*, 411 U.S. at 802–05, 93 S.Ct. 1817. This analysis provides that "[o]nce the employee has established a *prima facie* case, the em-

---

**5.** Plaintiff also contends that an African-American co-worker told her that Mr. Colassano does not like black people (Dkt. 31–15 at 38:1–39:13), and that after Plaintiff left the Product Management Department, Ms. Gurz allegedly discriminated against an Asian-American employee (*id.* at 45:19–46:3; 51:22–52:1). Not only is this testimony by Plaintiff likely inadmissible, but it simply is not enough to establish pretext, particularly where the record is devoid of facts in support of Plaintiff's claims.

ployer 'must proffer a legitimate, non-discriminatory reason for the adverse action. If it does so, then the burden shifts back to the [employee] to demonstrate pretext.'" *Verga v. Emergency Ambulance Serv.*, 98 Empl. Prac. Dec. (CCH) P45,204, 2014 WL 6473515, at *3, 2014 U.S. Dist. LEXIS 161512, at *9 (E.D.N.Y.2014) (citing *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 94–95 (2d Cir.2001)).

▇ "To establish a prima facie case for retaliation under Title VII, the plaintiff must show that; (1) he participated in a protected activity; (2) his employer was aware of this activity; (3) he suffered an adverse employment action; and (4) his protected activity was the but-for cause of the alleged adverse employment action." *Henvill v. Metro. Transp. Auth.*, No. 13 Civ. 7501(GBD), 2014 WL 5375115, at *3, 2014 U.S. Dist. LEXIS 149066, at *10 (S.D.N.Y. Oct. 10, 2014) (citing *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir.2014)).

With regard to causation, the Supreme Court of the United States recently clarified that "[a] plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer," as distinct from "a motivating factor," which had previously been the standard in the Second Circuit. *See Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, —— U.S. ——, 133 S.Ct. 2517, 2534, 186 L.Ed.2d 503 (2013). "Although New York State Courts have yet to address the impact of the Supreme Court's recent holding in *Nassar* on the NYSHRL, nor has the Second Circuit provided ... guidance as to this issue, this Court will continue to construe the NYSHRL as requiring the same elements as Title VII." *Verga*, 2014 WL 6473515, at *6 n. 4, 2014 U.S. Dist. LEXIS 161512, at *9 n. 4 (internal quotations and citation omitted). *See Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 847 n. 7 (2d Cir.2013) (declining to address whether *Nassar* applies to NYSHRL claims).

In her complaint, Plaintiff alleges that Defendant's retaliation against her was in the form of "negative job action, including but not limited to demotion." (Dkt. 1 at ¶ 44). At her deposition, Plaintiff testified that she was retaliated against on two occasions. First, Plaintiff claims that she was retaliated against after making informal complaints to her supervisors regarding discrimination. Plaintiff claims that Defendant retaliated against her by "[sweeping her complaints] under a rug ... nothing was ever resolved...." (Dkt. 31–15 at 31:9–23). However, Plaintiff testified that these complaints relate to conduct taken by Mr. Colassano, *i.e.*, during 2006–2008 (Dkt. 31–15 at 31:24–25; 32:1–24), and at least any claims under Title VII or the ADEA based on this conduct are barred by the 300–day statute of limitations. Second, Plaintiff claims that she was retaliated against in the form of termination from her position in the Accounts Payable Department, after she filed a charge with the EEOC. (*Id.* at 30–31).

### A. Adverse Employment Action

There is no question that Plaintiff's internal complaints at HSBC and her filing a charge with the EEOC qualify as protected activities of which her employer was plainly aware. *See Thomas v. iStar Fin., Inc.*, 438 F.Supp.2d 348, 364 (S.D.N.Y. 2006) ("Informal complaints to supervisors" are protected activity under Title VII); *Milne v. Navigant Consulting, Inc.*, No. 08 Civ. 8964(PAE), 2012 WL 3283454, at *5, 2012 U.S. Dist. LEXIS 114005, at *14 (S.D.N.Y. Aug. 13, 2012) ("Filing an EEOC charge is a protected activity under Title VII."). However, most of Plaintiff's retaliation claims fail because, with the exception of the termination of her em-

ployment, she cannot establish an adverse employment action.

▌ "To constitute an adverse employment action for purposes of a retaliation claim, the action must be 'materially adverse' such that it could 'dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Giordano–Forkan v. N.Y.C. Dep't of Educ.*, No. 13 Civ. 06950(GBD), 2014 WL 5369426, at *2, 2014 U.S. Dist. LEXIS 153977, at *6–7 (S.D.N.Y. Oct. 17, 2014) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). "Alleged acts of retaliation must be evaluated both separately and in the aggregate, as even trivial acts may take on greater significance when they are viewed as part of a larger course of conduct." *Tepperwien*, 663 F.3d at 568.

Under the facts presented here, Plaintiff's claim that her complaints were "ignored" by Mr. Colassano does not meet the threshold required for an adverse employment action. *See Fincher*, 604 F.3d at 721 ("We are of the view nonetheless that, at least in a run-of-the-mill case such as this one, an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint.");[6] *see also Scoppettone v. Mamma Lombardi's Pizzico, Inc.*, 523 Fed.Appx. 73, 75 (2d Cir.2013) (same); *James v. N.Y.C. Health & Hosps. Corp*, No. 12 Civ. 8762(KBF), 2014 WL 1485393, at *12, 2014 U.S. Dist. LEXIS 52145, at *35 (S.D.N.Y. Apr. 15, 2014).

Moreover, the undisputed facts demonstrate that Plaintiff's complaints were investigated. (*See* Dkt. 31–3 at ¶¶ 26–28 (Human Resources reviewed Plaintiff's 2007 performance evaluation on three separate occasions, at Plaintiff's request); *id.* at ¶¶ 30–32 (investigation of Plaintiff's complaint that her poor performance rating was the result of race and age discrimination on the part of Mr. Colassano and Ms. Gurz); Dkt. 31–6 at ¶¶ 5–7 (meeting arranged by employee relations between Plaintiff and her supervisor Ms. Kirk, and investigation of Ms. Kirk's management style by HSBC)). *See also* Dkt. 32–7 (email between Plaintiff and Ms. Dawson–Hall discussing investigation into Plaintiff's 2007 performance evaluation). In her deposition, Plaintiff acknowledged that these meetings occurred.

Regarding Plaintiff's claim that she was terminated from the Accounts Payable Department, it is well-settled that such an

---

**6.** The Court is cognizant that in *Fincher,* the Second Circuit Court of Appeals noted that "[w]e do not mean to suggest that failure to investigate a complaint cannot ever be considered an adverse employment action for purposes of a retaliation claim." 604 F.3d at 722. For example, the failure to investigate a complaint may rise to the level of an adverse employment action where the failure "is in retaliation for some separate, protected act by the plaintiff." *Id.* at 722; *see also Delisi v. Nat'l Ass'n of Prof'l Women, Inc.*, 48 F.Supp.3d 492, 496 (E.D.N.Y.2014) (where the plaintiff alleged that she "repeatedly complained in 2012 ... left on a medical leave, filed a complaint with the EEOC, returned to work in January 2013, and then complained again to ... Defendant ... [and] that the

failure to investigate following her return to work in January 2013 was in retaliation of her earlier complaints," finding that such facts were distinguishable from *Fincher,* and declining to dismiss the plaintiff's retaliation claim). Here, Plaintiff claims that Defendant's failure to investigate was taken in retaliation for her filing of the same discrimination complaints. (*See* Dkt. 31–15 at 31:9–23) (Defendant retaliated against Plaintiff by not giving her responses to the complaints she made, but rather "swept [them] under a rug," and "nothing was ever resolved...."). Plaintiff's claims are analogous to those described in *Fincher,* and thus she is unable to prove an adverse employment action based on Defendant's failure to investigate her complaints.

action qualifies as an adverse employment action. *See Costa v. Sears Home Improvement Prods.*, 65 F.Supp.3d 333, 349 (W.D.N.Y.2014) ("Plaintiff's termination alone is an adverse employment action sufficient to support her retaliation claim."). However, Plaintiff's allegations regarding her termination fail at the fourth prong of the retaliation analysis, because she cannot establish that Defendant would not have terminated her employment but-for her complaints of discrimination.

## B. *But–For Causation*

██ The "but-for" causation standard "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 133 S.Ct. at 2533. As explained by one court:

> To establish the requisite causal connection between the filing of [an] administrative complaint[ ] and the adverse employment action[ ] ... suffered, [the plaintiff] must show that [the employer] would not have taken action but for [the] protected activity. As the Second Circuit has made clear, when an adverse employment action is "part of an extensive period of progressive discipline," and "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."

*Chinnery v. N.Y.S. Office of Children & Family Servs.*, No. 10 Civ. 882(DAB)(FM), 2014 WL 1651950, at \*12, 2014 U.S. Dist. LEXIS 60896, at \*33 (S.D.N.Y. Apr. 25, 2014) (quoting *Slattery*, 248 F.3d at 95), *adopted*, 2015 U.S. Dist. LEXIS 29523 (S.D.N.Y. Mar. 10, 2015).

██ Here, Defendant has presented undisputed evidence establishing that Plaintiff would have been terminated from her position, regardless of her complaints of discrimination and filing an EEOC charge, because Defendant was engaged in corporate cutbacks. Defendant submits the affidavit of Peter F. Hutter, Vice President of Employee Relations at HSBC. (Dkt. 31–3). In his affidavit, Mr. Hutter explains that when the Accounts Payable Department merged into the Procurement Department in March 2010, as a result of corporate realignment it became necessary to eliminate some positions, as each department had its own individual responsible for system project management. (*Id.* at ¶¶ 47–48). Jason Roberts, an employee from the Procurement Department, had consistently better performance ratings than Plaintiff, and he was retained as the system project manager. (*Id.* at ¶ 48). Significantly, the severance package offered by Defendant specifically provided that the release contained in Plaintiff's separation agreement would not waive the claims contained in her pending EEOC charge. (Dkt. 31–6 at ¶ 12).

Mr. Hutter's affidavit notes that another individual, Nicholas Marchuk, also had his position eliminated because it was "redundant." (Dkt. 31–3 at ¶¶ 49–50). Mr. Marchuk had not made any internal complaints at HSBC or filed any EEOC charges regarding discrimination by HSBC. (*Id.* at ¶ 50).

Further, Plaintiff acknowledged that her position was eliminated when the cutbacks occurred in 2010 (Dkt. 31–15 at 144:6–8), and that other employees' positions were eliminated at that time, including a white male, who had not made any prior complaints of discrimination. (*Id.* at 144:9–25; 145:1–4, 16–25; 146:9–13; *see also id.* at 17:5–18, 23–25; 18:1–5 (disclosure on severance package indicated that other employees were affected by the cutback in Defendant's workforce)).

Plaintiff offers only conclusory statements that she was terminated because of her complaints of discrimination. Yet, the termination of Plaintiff's employment came

long after she first complained of alleged discrimination, and Defendant has presented abundant evidence that Plaintiff's position would have been eliminated regardless of any such complaints due to its corporate reorganization. There is simply no evidence in the record establishing that Plaintiff's complaints of discrimination were the but-for cause of the termination of her employment. Because there is no genuine issue of material fact relating to Plaintiff's retaliation claim, it is dismissed.

## VI. *PLAINTIFF'S STATE LAW CLAIMS*

Plaintiff's claims pursuant to the NYSHRL have all necessarily been resolved as a result of the above discussion regarding Plaintiff's Title VII, ADEA, § 1981, and retaliation claims, with the exception of Plaintiff's complaints that Ms. Gurz discriminated against her based upon her age.[7]

When a plaintiff elects to pursue her NYSHRL claims in court rather than in an administrative forum, the statute of limitations on those claims is three years. *Sotomayor v. City of N.Y.*, 862 F.Supp.2d 226, 248–49 (E.D.N.Y.2012) (citing N.Y. C.P.L.R. 214(2)), *aff'd*, 713 F.3d 163 (2d Cir.2013). Defendant argues that any claims under the NYSHRL based on conduct occurring before July 2008 are time-barred, because Plaintiff did not file her federal complaint until July 20, 2011. (Dkt. 34 at 4). If Defendant is correct, that means that Plaintiff's claims of age discrimination by Ms. Gurz would be time-barred, since Plaintiff transferred out of Ms. Gurz's department in April 2008.

The Second Circuit Court of Appeals has not yet decided whether the filing of a charge with the EEOC serves to automatically toll the statute of limitations on claims asserted pursuant to the NYSHRL. *See Esposito v. Deutsche Bank AG*, No. 07 Civ. 6722(RJS), 2008 WL 5233590, at *5, 2008 U.S. Dist. LEXIS 101460, at *14 (S.D.N.Y. Dec. 16, 2008). District courts within the Second Circuit have reached differing conclusions on this issue. *Cf. Siddiqi v. N.Y.C. Health & Hosp. Corp.*, 572 F.Supp.2d 353, 373 (S.D.N.Y.2008) (statute of limitations on NYSHRL and NYCHRL claims "is tolled during the period in which a complaint is filed with the EEOC") *and Sundaram v. Brookhaven Nat. Labs.*, 424 F.Supp.2d 545, 565 (E.D.N.Y.2006) ("Because complaints filed with the EEOC are deemed constructively to be cross-filed with the NYDHR, the statute [of limitations on Plaintiff's NYSHR claims] is also tolled during the pendency of a claim filed with the EEOC"); *adopted*, 424 F.Supp.2d 545 (E.D.N.Y.2006), *with Osorio v. Source Enters.*, No. 05 Civ. 10029(JSR), 2006 WL 2548425, at *3, 2006 U.S. Dist. LEXIS 63032, at *8 (S.D.N.Y. Sept. 1, 2006) (dismissing federal failure to promote claim and any analogous state law claims because "an EEOC charge does not toll the time for state law claims arising from the same events. . . .") *and Oliver v. N.Y. Tel. Co.*, No. 91–CV–179S, 1993 WL 173471, at *2–3, 1993 U.S. Dist. LEXIS 6757, at *7–9 (W.D.N.Y. Mar. 31, 1993) (declining to toll statute of limitations).

In fact, courts in this district have reached differing conclusions. *Cf. Oliver*, 1993 WL 173471, at *2–3, 1993 U.S. Dist. LEXIS 6757, at *7–9, *with Celmer v. Livingston Int'l, Inc.*, 120 Fair Empl. Prac. Cas. (BNA) 655, 2013 WL 951530, at *6–7, 2013 U.S. Dist. LEXIS 34183, at *16–18 (W.D.N.Y.2013) (EEOC filing tolled

---

7. As set forth in Plaintiff's EEOC charge, she does not allege discrimination by Mr. Colassano based on age, but rather only race (Dkt. 31–9 at 4), and any NYSHRL claims involving Mr. Colassano based upon race were necessarily resolved along with Plaintiff's claims under 42 U.S.C. § 1981.

NYSHRL statute of limitations) *and Sloth v. Constellation Brands, Inc.,* 883 F.Supp.2d 359, 373 n. 5 (W.D.N.Y.2012) ("While some state law claims, such as tort claims, may not be tolled by the filing of an EEOC complaint ... by statute, state Human Rights law claims arc tolled by the filing of an administrative complaint with the New York State Division of Human Rights, (N.Y.Exec.L. § 297(9)) and courts in this Circuit have extended the tolling period to administrative complaints filed with the EEOC.").

Defendant contends that a recent case issued from the Second Circuit Court of Appeals, *Castagna v. Luceno,* 744 F.3d 254 (2d Cir.2014), which was pending during briefing on Defendant's motion, compels the Court to find that the statute of limitations for Plaintiff's NYSHRL claim was not tolled by the filing of an EEOC charge. In *Castagna,* the Second Circuit held that "filing an EEOC charge does not toll the limitations period for state-law tort claims, even if those claims arise out of the same factual circumstances as the discrimination alleged in the EEOC charge." *Id.* at 255. In arriving at this conclusion, the Second Circuit relied on the Supreme Court case of *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), which held that the statute of limitations for race discrimination claims under 42 U.S.C. § 1981 was not tolled while similar Title VII claims were pending at the EEOC. *Id.* at 465–66, 95 S.Ct. 1716. Significantly, the *Castagna* court rejected the plaintiff's attempt to distinguish the *Johnson* case because it involved two federal statutes, rather than a state and federal statute:

Despite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief. The legisla-

tive history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and *other applicable state and federal statutes.*

*Id.* at 258 (quoting *Johnson,* 421 U.S. at 459, 95 S.Ct. 1716) (emphasis in original); *see also Oliver,* 1993 WL 173471, at *3, 1993 U.S. Dist. LEXIS 6757, at *9–10 ("Having chosen to pursue her claim in state court only, plaintiff was not required to wait for the issuance of a Right to Sue letter prior to initiating suit in slate court. Nor can she now rely on the EEOC's issuance of a Right to Sue letter to make the filing of her Complaint timely.").

Thus, *Castagna* suggests that Title VII does not toll the separate statute of limitations applicable to claims under the NYSHRL. However, Defendant does not expressly address the operation of NYSHRL § 279(9) which at least some courts have held prohibits a party from filing a claim under the NYSHRL, even when the charge is initially filed with the EEOC, since, under the Worksharing Agreement between the EEOC and the Division, an administrative claim is technically pending before both the EEOC and the Division. *See, e.g., Martinez–Tolentino v. Buffalo State Coll.,* 277 A.D.2d 899, 899, 715 N.Y.S.2d 554 (4th Dep't 2000). Under New York law, a statute of limitations is tolled where the commencement of an action is prohibited by statute. *See* CPLR 204(a). Thus, because the language in NYSHRL § 297(9) prohibits filing a claim with the state court while that same claim is pending before the Division, CPLR 204(a) arguably tolls the filing of the claim in state court while the claim is pending before the EEOC. Thus, while *Castagna* suggests that Title VII would not toll the statute of limitations under the NYSHRL, NYSHRL § 297(9) and CPLR 204(a) may toll the statute of limitations. In other words, federal law may not toll

the NYSHRL statute of limitations, but state law may do so.

Since the Court need not resolve this tolling issue under state law in order to resolve the federal claims asserted by Plaintiff, it would not be appropriate for the Court to render a decision on the issue, particularly where it has not been adequately briefed by the parties. *See Bracci v. N.Y.S. Dep't of Corr. Svcs.*, No. 3:01–CV–01300, 2005 WL 2437029, at *10, 2005 U.S. Dist. LEXIS 40893, at *36 (N.D.N.Y. Sept. 30, 2005) ("All federal claims having been dismissed, and there being novel, complex, and unsettled issues of slate law related to the question of whether the statutes of limitation for the state law claims and counter-claims were tolled while Plaintiff pursued her administrative remedy before the NYSDHR ... the Court declines to exercise its discretion to maintain jurisdiction over the remaining state law claims."). *See also Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir.1988) ("When all bases for federal jurisdiction have been eliminated from a case so that only pendent state claims remain, the federal court should ordinarily dismiss the state claims."); *Borden v. Blue Cross & Blue Shield of W.N.Y.*, 418 F.Supp.2d 266, 274 (W.D.N.Y.2006) ("The Second Circuit has advised that district courts should typically decline to exercise jurisdiction over state law claims where all federal claims have been eliminated before trial."). Thus, to the extent that Plaintiff attempts to pursue an age discrimination claim for disparate treatment under the NYSHRL based upon conduct by Ms. Gurz occurring before June 2, 2009, the Court declines to exercise supplemental jurisdiction over any

such claims and those claims are dismissed without prejudice.[8]

### *CONCLUSION*

For the foregoing reasons, Defendant's motion for summary judgment is granted, and Plaintiff's complaint is dismissed in its entirety with prejudice, except to the extent that Plaintiff asserts claims under the NYSHRL for age discrimination based on disparate treatment by Ms. Gurz allegedly occurring prior to June 2, 2009, which claims are dismissed without prejudice as the Court declines to exercise supplemental jurisdiction for the reasons set forth herein. The Clerk of Court is directed to close the case.

SO ORDERED.

---

**8.** To be clear, the Court is dismissing with prejudice Plaintiff's state law claims based upon conduct occurring after June 2, 2009, and regardless of the time period, the Court dismisses Plaintiff's state law claims alleging retaliation, race discrimination and any hostile work environment, since the Court necessarily reached the merits of those claims when it resolved the federal claims.